**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DAMON ALLEN,

Petitioner,

v. Case No. 10-14832

CARMEN PALMER,

Respondent.
_____________________________________/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY**

When the identifying witness against him unexpectedly showed up for his first-degree murder trial, Michigan prisoner Damon Allen ("Petitioner") decided to enter a bargained guilty plea to second-degree murder and possession of a firearm during the commission of a felony ("felony firearm"), thus avoiding a term of mandatory life. He was sentenced in 2009 to consecutive terms of fifteen-to-thirty years imprisonment and two years imprisonment for the firearm count. He has now filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. In his petition, he raises claims of ineffectiveness of defense counsel (and the voluntariness of his plea) and abuse of the trial court's discretion in denying his motion to withdraw the guilty plea. Respondent has filed an answer to the petition contending that it lacks merit. The court agrees that the Petition is meritless, and it will be denied. The court will also deny a certificate of appealability.

## I. BACKGROUND

Petitioner's convictions arise from the shooting death of Lamont Roberts during a dispute outside a gas station in Detroit, Michigan on August 24, 2008. Petitioner was charged with first-degree murder and felony firearm. At the preliminary examination, the victim's girlfriend, Latasha Jones, testified about the altercation and identified Petitioner as the shooter. Subsequently, on the date set for trial, Jones did not appear and defense counsel moved for dismissal. The trial court, however, denied the motion, adjourned the trial, and issued a bench warrant for Jones's arrest. On the substitute trial date Jones was present and apparently prepared to testify. Realizing this, Petitioner decided to accept a day-of-trial deal in which he would plead guilty to second-degree murder and felony firearm in exchange for dismissal of the first-degree murder charge and a sentencing agreement for consecutive terms of fifteen-to-thirty years imprisonment and two years imprisonment. At that hearing, Petitioner confirmed that he had signed the plea agreement and that he understood its terms and wanted to plead guilty. He acknowledged that he was giving up certain rights by pleading guilty, including his trial rights and his right to file a claim of right on appeal. Petitioner indicated that no other threats or promises, other than those contained in the agreement, had been made to him to induce his plea and that he was pleading guilty of his own free will.

Just one week later, Petitioner moved to withdraw his plea alleging that defense counsel failed to inform him that he was waiving his appeal of right and that he misunderstood or was misadvised about his plea. The trial court conducted a hearing on June 2, 2009. At that time, defense counsel informed the court that once Latasha

Jones appeared to testify at trial, Petitioner "despaired" and decided to plead guilty. The trial court determined that Petitioner's plea was knowing and voluntary, and denied the motion. The court proceeded to sentencing. Petitioner apologized to the victim's family and the court, stating that there was "no excuse" for taking another man's life. The court then sentenced Petitioner in accordance with the relatively lenient terms of his plea agreement.

Four months later, Petitioner submitted a letter to the court asserting his innocence and again seeking to withdraw his plea. The trial court conducted an evidentiary hearing on February 19, 2010. Defense counsel, David Cripps, testified that discovery was made available to Petitioner and they discussed the evidence. They also discussed potential alibi witnesses, but Cripps said that he was not able to reach them by telephone. Counsel informed Petitioner that there were eyewitnesses to the shooting and that a video recording demonstrated that he was at the scene; he advised Petitioner that he should ensure that any alibi witnesses were truthful. Petitioner then told Cripps to abandon an alibi defense. Counsel stated that he was prepared to go to trial, but Petitioner decided to plead guilty to avoid a mandatory life sentence. Counsel denied that Petitioner was confused or shocked, or that he was coerced into taking a plea. Counsel explained that Petitioner had simply been counting on Latasha Jones not appearing for trial and that her appearance caused him to have a different outlook on the case and induced him to accept the plea. Counsel acknowledged that Petitioner was upset about Jones appearing for trial.

Petitioner and his mother also testified at the hearing. Petitioner claimed that counsel told him that he was not prepared for trial and that his strategy was to have

Petitioner plead guilty and later withdraw his plea to give him more time. Petitioner denied telling counsel to abandon the alibi defense and thought that he did so because he was not focused on Petitioner's case. Petitioner also testified that he would not have pled guilty if he had known that he was giving up his right to trial. Petitioner's mother, Pamela Allen, testified that she met with defense counsel and spoke to him on the telephone a few times. They did not discuss specifics about the case, but she did not believe that he sufficiently consulted with her son. She also testified that counsel advised her son to take the plea and that counsel told her he was not prepared for trial because he had not spoken to a newly-found witness. She said that her son was supposed to be in Kentucky at the time of the shooting, but did not have first-hand knowledge of his whereabouts. At the close of the hearing, the trial court determined that defense counsel was effective and that Petitioner's plea was knowing and voluntary. The court denied the motion to withdraw the plea, and later denied reconsideration.

Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied "for lack of merit in the grounds presented." *People v. Allen*, No. 298394 (Mich. Ct. App. July 7, 2010). He also filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Allen*, 789 N.W.2d 447 (Mich. 2010).

Petitioner thereafter filed his federal habeas petition asserting that: (1) defense counsel was ineffective for failing to put in a notice of alibi, for failing to investigate his alibi, for failing to seek suppression of witness identification testimony, for failing to give him a discovery package, and for coercing him into pleading guilty; and (2) the trial court

abused its discretion in denying his motion for plea withdrawal. Respondent has filed an answer to the petition contending that it should be denied for lack of merit.

## II. STANDARD OF REVIEW

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's

case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, __ U.S. __, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, __ U.S. __, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with

clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel Claims

Petitioner first asserts that he is entitled to habeas relief because defense counsel was ineffective for failing to put in a notice of alibi, for failing to investigate his alibi, for failing to seek suppression of witness identification testimony, for failing to give him "a discovery package," and for coercing him into pleading guilty.

The United States Supreme Court has set forth a two-part test for evaluating the claim of a habeas petitioner who is challenging a plea on the ground that he was denied his Sixth Amendment right to effective assistance of counsel. First, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). To demonstrate that counsel's performance fell below this standard, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Second, if the petitioner satisfies the first prong of this test, the petitioner must then demonstrate that counsel's performance resulted in prejudice—"that there is a reasonable probability that, but for counsel's errors, he would not have pleaded . . . and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The Supreme Court has explained that "[in] many . . . plea cases, the 'prejudice' inquiry will closely resemble the

inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through trial." *Id*. The Court has also emphasized that "these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncracies of the particular decisionmaker.'" *Id*. at 59-60 (quoting *Strickland*, 466 U.S. at 695).

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 788. Additionally, the Supreme Court has emphasized the extraordinary deference to be afforded trial counsel in the area of plea bargaining. *See Premo v. Moore*, __ U.S. __, 131 S. Ct. 733, 741 (2011) (stating that "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage"); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011) (citing *Premo*).

In this case, the state trial court denied relief on these claims finding that Petitioner's plea was knowing and voluntary and that he had not shown that counsel was ineffective. The state appellate courts denied leave to appeal in standard orders.

The state court decisions are neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[1]

As an initial matter, the court notes that Petitioner's claims concerning defense counsel's conduct during the pre-plea period are foreclosed by his plea. It is well-established that claims about the deprivation of constitutional rights that occur before the entry of a plea are waived by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Simply stated, a defendant who pleads guilty or no contest generally waives any non-jurisdictional claims that arose before his plea. In such a case, the court's inquiry is limited to whether the plea was knowing, intelligent, and voluntary. *Broce*, 488 U.S. at 569. Petitioner pleaded guilty to second-degree murder and felony firearm. Absent a showing that his plea was not knowing, intelligent, or voluntary, his claims concerning counsel's conduct during the pre-plea period are foreclosed by his plea.[2]

---

[1]The court would reach the same result even under a *de novo* standard of review.

[2]The court also agrees with Respondent that Petitioner's claims concerning counsel's conduct during the pre-plea period lack merit. (*See* Answer at 17-21, Dkt. # 6.)

A plea is voluntary if it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea. *See Brady v. United States*, 397 U.S. 742, 755 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749. The plea is intelligent and knowing where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his or her mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Id.* at 756. The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748.

The state court record reveals that Petitioner's plea was knowing, intelligent, and voluntary. Petitioner was in his thirties at the time of his plea and there is no evidence that he suffered from any physical or mental problems which would have impaired his ability to understand the criminal proceedings or the nature of his plea. Petitioner was represented by legal counsel and conferred with counsel during the plea process. The trial court advised Petitioner of his trial and appellate rights and the fact that he would be giving up certain rights by pleading guilty. The court discussed the terms of the plea and its consequences. Petitioner confirmed he was pleading guilty of his own free will and that he had not been threatened or promised anything, other than what was stated in the plea agreement, to induce his plea. Petitioner responded appropriately to the court's questions and provided a factual basis for his plea which demonstrated his guilt of the offenses. He also signed a written plea agreement.

Petitioner's assertion that defense counsel coerced him into taking a plea conflicts with his own sworn testimony at the plea hearing where he denied being

threatened and said that he was pleading guilty of his own free will. There is no credible evidence that counsel used coercive tactics to get Petitioner to accept the plea agreement. As aptly stated by the Sixth Circuit when faced with a challenge to a plea bargain based upon alleged off-the-record statements:

> If we were to rely on [the petitioner's] alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy . . . indicating the opposite. This we will not do, for the plea colloquy process exists in part to prevent petitioners . . . from making the precise claim that is today before us. "[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry."

*Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). Having carefully reviewed the record, the court is satisfied Petitioner's plea was knowing, intelligent, and voluntary; it was plainly—and understandably—influenced by Petitioner's realization that an important eyewitness was prepared to testify rather than to remain in hiding as he had hoped she would.

Petitioner has also not shown that defense counsel was ineffective in advising him about his case. To the contrary, the record indicates that counsel advised Petitioner to plead guilty based upon the evidence likely to be used against him at trial and the lack of a good defense to the charges. There is no indication that counsel provided erroneous information about potential witnesses or an alibi defense. Rather, the record indicates that counsel and Petitioner discussed an alibi defense and abandoned it when Latasha Jones appeared for trial, potential defense witnesses could not be reached by telephone, and a video linked Petitioner to the scene of the shooting. Nor has Petitioner shown that he would have prevailed on any motion to

suppress evidence. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings). The issues about which Petitioner argues should have been further investigated or otherwise undertaken by counsel are speculative, unsupported, and incapable of casting any doubt upon the reliability of the proceedings.

Petitioner has also not shown that defense counsel misadvised him about his plea or its consequences. Moreover, even if Petitioner was misinformed by counsel, he is not entitled to habeas relief. A trial court's proper plea colloquy cures any misunderstandings that a defendant may have about the consequences of a plea. *See Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999); *see also Boyd v. Yukins*, 99 F. App'x 699, 703 (6th Cir. 2004). The record demonstrates that the trial court conducted a proper colloquy. The court reviewed the terms of the plea agreement and the direct consequences of the plea. Petitioner indicated that he understood such matters. Petitioner has failed to establish that his plea was unknowing or involuntary.

Furthermore, counsel's strategy in pursuing a plea and foregoing other avenues of defense was entirely reasonable given the nature of the case, the recorded preliminary examination testimony and likely trial evidence, and the lack of any solid defense. Petitioner also received a very substantial benefit for his bargain, chiefly the

dismissal of the first-degree murder charge, conviction on which mandates a non-parolable life sentence. Petitioner's sentencing agreement, to which the court agreed, brought him fifteen-to-thirty years imprisonment plus two years consecutive. The possibility of parole after approximately fifteen years (depending on how good behavior credits and deductions might later be calculated) is without question a benefit compared to life. Defense counsel's conduct was well within the boundary of "reasonable," and Petitioner has failed to establish that counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on such a basis.

**B. Abuse of Discretion Claim**

Petitioner also asserts that he is entitled to habeas relief because the state trial court abused its discretion in refusing to allow him to withdraw his plea. Such a claim, however, is not cognizable on habeas review because it is a state law claim. A criminal defendant has no federal constitutional right, or absolute right under state law, to withdraw a knowing, intelligent, and voluntary plea. *Chene v. Abramajtys*, 76 F.3d 378, No. 95-1491, 1996 WL 34902, at *2 (6th Cir. Jan. 29, 1996) (table). Consequently, "the decision to permit a defendant to withdraw a plea invokes the trial court's discretion. A trial court's abuse of discretion generally is not a basis for habeas corpus relief." *Adams v. Burt*, 471 F. Supp. 2d 835, 843 (E.D. Mich. 2007) (citations omitted); *see also Hoffman v. Jones*, 159 F. Supp. 2d 648, 655 (E.D. Mich. 2001). Federal habeas courts have no authority to correct perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). Habeas relief is not warranted on this claim.

## IV. CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits of the claim. *Id*. at 336-37. Having considered the matter, the court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that the petition for a writ of habeas corpus [Dkt. # 1] is DENIED and the matter is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: January 30, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 30, 2013, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\10-14832.ALLEN.Deny.Habeas.Pet.wpd